UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIAM JONES et al.,

        Plaintiff,

                                          Case No. 11-14432

v.                                        Honorable Thomas L. Ludington

WRIGHT MEDICAL TECHNOLOGY,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION
FOR TRANSFER AND CONSOLIDATION OF COMPANION CASES
AND GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND ANSWER**

This products liability dispute concerns an allegedly defective orthopedic device used in hip replacements. Defendant Wright Medical Technology designed and manufactured the device. Implanted in Plaintiff William Jones, the device allegedly malfunctioned, necessitating a second hip replacement surgery.

Mr. Jones and his wife, Plaintiff Sharleen Jones, brought suit against Defendant in this Court. Their claims include negligent design, negligent manufacture, general negligence, and loss of consortium. Plaintiffs now move to transfer the case to the federal court in Detroit to consolidate it with a second suit that Plaintiffs' counsel has filed against Defendant, *Bradt v. Wright Medical Technology*, No. 11-cv-14115 (E.D. Mich. 2011). Consolidation is appropriate, Plaintiffs assert, as the claims in *Bradt* also include negligent design, negligent manufacture, and general negligence. Defendant opposes the motion. Defendant notes that the products at issue are different, were manufactured in different lots, and were implanted in gentlemen with different weights and lifestyles. Because Defendant is correct that the respective cases will

require more than substantially similar evidence to establish the respective claims of the litigants, Plaintiffs' motion will be denied.

Defendant also moves for leave to amend its answer to add the affirmative defenses of the statute of limitations and comparative fault. Plaintiffs oppose the motion, asserting that permitting the amendment would prejudice Plaintiffs' ability to prosecute their cause. As Plaintiffs note in their motion for transfer, however, the case "is in its very early stages of discovery." In fact, discovery does not close until October 31, 2012, dispositive motions are not due until December 3, 2012, and trial is not scheduled to begin until May 21, 2013. Because Plaintiffs have not demonstrated how granting leave to amend would cause undue prejudice, Defendant's motion will be granted.

I

A

Mr. Jones is a sixty-two-year-old gentleman. He is 6'1" tall and weighs about 250 pounds. In March 2006, Mr. Jones underwent hip replacement surgery at the University of Michigan Hospital. Replacing the gentleman's right hip, doctors implanted a "Profemur Z stem" designed and manufactured by Defendant. Specifically, doctors implanted a "1214 neck with Z stem" (stem lot #026314498, neck lot #U1235567). In December 2009, the complaint alleges, the device malfunctioned. Doctors in Florida had to replace the hip, again, because the gentleman "was diagnosed with a catastrophic failure of his right femoral stem." Jones Compl. ¶ 12.

Mr. Jones and his wife brought suit in this Court based on diversity of citizenship of the parties. Mr. Jones alleges claims of negligent design, negligent manufacture, negligent failure to

warn, general negligence, breach of express and implied warranties, and fraud. He seeks compensation for his "[p]ermanently damaged right hip and pelvic area including but not limited to tendon injuries including pain, limp, imbalance and inability to walk properly, limitations to life activities and functions, suffering, anguish, disfigurement, embarrassment, and humiliation." Mrs. Jones, in turn, seeks compensation for the lost "love, affection, services, and companionship of her husband."

Plaintiffs now move to transfer this case and consolidate it with another products liability dispute, *Bradt v. Wright Medical Technology*, 11-cv-14115 (E.D. Mich.). ECF No. 12. That case also concerns an allegedly defective product designed and manufactured by Defendant. Specifically, it concerns a "1254 neck with Z stem" (stem lot #056334875, neck lot #02317021). In May 2006, doctors at the University of Michigan Hospital implanted the device as part of the right hip replacement performed on Plaintiff Daniel Bradt. Mr. Bradt is a seventy-one-year-old gentleman. He is 5'11" tall and weighs about 250 pounds. In October 2008, the complaint alleges, the device malfunctioned. Doctors in Michigan had to replace the gentleman's hip, again, as Mr. Bradt "was diagnosed with a fractured modular femoral neck of his right total hip component."

Mr. Bradt then filed suit against Defendant in the federal court in Detroit. The case has been assigned to Judge Cox based on diversity of citizenship of the parties. Like Mr. Jones, Mr. Bradt alleges state law claims of negligent design, negligent manufacture, negligent failure to warn, general negligence, breach of express and implied warranties, and fraud, and therefore seeks compensation for his "[p]ermanently damaged right hip and pelvic area including but not limited to tendon injuries including pain, limp, imbalance and inability to walk properly,

limitations to life activities and functions, suffering, anguish, disfigurement, embarrassment, and humiliation."  (Mr. Bradt's complaint does not include loss of consortium claims.)

Mr. and Mrs. Jones, as noted, now move to transfer the case to Detroit and consolidate it with Mr. Bradt's case pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule 83.11(b)(7).  Plaintiffs assert that consolidation is appropriate as "[b]oth actions involve common questions of law and fact as both allege a similar defect in the identically defective medical device, installed by the same surgeon at the same hospital, within a very short time of each other." Pls.' Mot. to Consolidate ¶ 5, ECF No. 12.  Plaintiffs elaborate that their "discovery will likely focus upon the design, manufacture, distribution[,] marketing, warning and warranties of the defective prostheses, to identical results.  Plaintiffs' experts in the fields of manufacturing[,] especially the manufacturer of medical devices,  in both cases will be the same and one can imagine the Defendant will also utilize and call upon the same experts to testify in defense of both their cases." Pl.'s Mem. in Supp. of Pls.' Mot. 2.

Defendant opposes the motion, asserting "these cases involve substantially different witnesses, requiring the introduction of different records, involving different products at issue, and therefore, do not involve 'substantially similar evidence.' " Def.'s Resp. in Opp'n to Pls.' Mot. 4, ECF No. 15.  Defendant elaborates that the respective gentlemen base their claims on different products — Mr. Jones's "hip prosthesis contained a plasma Z stem fitted with a PHAO-1214 neck component.  Plaintiff Bradt had a plasma Z stem fitted with a PHAO-1254 neck component.  The stem and neck components were manufactured in different lot[s]." *Id*. at 4.  Summarizing, Defendant concludes: "Two different Plaintiffs, with different lifestyles, different ages, different heights and weights, implanted with two different products, with alleged injuries

occurring nearly 1.5 years apart, in different states, treated by different doctors, in different hospitals.  The evidence at trial will be vastly different." *Id*. at 5.

**B**

Eastern District of Michigan Local Rule 83.11 defines "companion cases" as "those in which it appears that: (i) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present, and the cases arise out of the same transaction or occurrence."  E.D. Mich. R. 83.11(b)(7); *see generally Grutter v. Bollinger*, 16 F. Supp. 797, 804–05 (E.D. Mich. 1998), *aff'd on other grounds sub nom. Gratz v. Bollinger*, 539 U.S. 244 (2003).

In this case, the cases do not arise out of the same transaction or occurrence.  Mr. Jones alleges that a device designed and manufactured by Defendant, a "1214 neck with Z stem" (stem lot #026314498, neck lot #U1235567), malfunctioned.  Specifically, forty-five months after the device was implanted, Mr. Jones "was diagnosed with a catastrophic failure of his right femoral stem." Jones Compl. ¶ 12.  This malfunction, the complaint alleges, was due to negligent design or negligent manufacture or both.  Mr. Bradt also alleges that a device designed and manufactured by Defendant, a "1254 neck with Z stem" (stem lot #056334875, neck lot #02317021), malfunctioned.  Specifically, twenty-nine months after the device was implanted, Mr. Bradt "was diagnosed with a fractured modular femoral neck of his right total hip component."  Bradt Compl. ¶ 11.  This malfunction, the complaint alleges, was due to negligent design or negligent manufacture or both.  The cases are not "companion cases" under subsection two of Local Rule 83.11(b)(7).

Likewise, the cases are not "companion cases" under subsection one. It is possible, (although by no means certain) that the respective negligent design claims may involve substantially similar evidence. But the respective negligent manufacturing claims will not.

"Unlike a negligent design claim, in a negligent manufacture claim the focus is on the actual product as somehow deviating from its intended condition." Linda Atkinson et al., *Torts: Michigan Law and Practice* § 8.8 (I.C.L.E. 2011); *see, e.g.*, *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 182 (Mich. 1984) (noting a manufacturing defect claim is established by demonstrating that "something [went] wrong in the manufacturing process and the product is not in its intended condition").

Here, the allegations are that two different devices, manufactured in different lots, broke in different ways. Mr. Jones, for example, "was diagnosed with a catastrophic failure of his right femoral stem." Jones Compl. ¶ 12. Mr. Bradt, in contrast, "was diagnosed with a fractured modular femoral neck of his right total hip component." Proving these claims will not require "substantially similar evidence." It will require different evidence. (Likewise, proving the loss of consortium claims of Mrs. Jones will require establishing a set of facts wholly distinct from those relevant to Mr. Bradt's case.) The cases are not "companion cases" under subsection one of Local Rule 83.11(b)(7). Plaintiffs' motion to transfer and consolidate the cases will be denied.

## II

Rule 15(a) provides that after a responsive pleading has been served "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court elaborates:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court.

*Foman v. Davis*, 371 U.S. 178, 182 (1962). Here, Plaintiffs argue that leave to amend should be denied Defendant for one reason, prejudice.[1]

"Prejudice" in the context of Rule 15 means more than the inconvenience of having to defend against a claim. *See, e.g., Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) ("[T]he fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule broadly allowing amendment to pleadings."). It requires something more substantial. For example,

> Prejudice may exist if extensive additional discovery would be required, if the proceedings would be delayed significantly, or if an imminent danger exists that the moving party would seek to abuse the discovery process to force a favorable settlement. Permitting a proposed amendment also may be prejudicial if discovery already has been completed, but this concern may be alleviated if the new claim arises from a similar set of operative facts and a similar time as the existing claims.

*Bleiler v. Cristwood Contracting Co.*, 868 F. Supp. 461, 463 (D. Conn. 1994), *rev'd in part on other grounds*, 72 F.3d 13 (2d Cir. 1995) (internal citation omitted) (citing *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985)).

In this case, permitting the amendment will inconvenience Plaintiff. It will necessitate additional legal research and, perhaps, additional discovery. It will not, however, cause undue

---

[1] As an aside, the Court notes that Plaintiffs elected not to make a futility argument, writing: "Defendant implies in its motion requesting relief from the no-waiver of affirmative defense rule that they have a viable statute of limitations defense and that amendment of their pleadings is not futile. Plaintiffs dispute Defendant's interpretation of the statute of limitations as it relates to the product liability but does not address that issue here as it is presently not before this Court." Pls.' Resp. to Def.'s Mot. to Amend 3, ECF No. 13.

prejudice. As Plaintiffs note in their motion for transfer and consolidation, the case "is in its very early stages of discovery." Pls.' Mot. ¶ 6. The close of discovery is more than four months away. Dispositive motions are not due until December 3, 2012, and trial is not scheduled to begin until May 21, 2013. Plaintiffs have not demonstrated undue prejudice. Defendant's motion will be granted.

### III

Accordingly, it is **ORDERED** that Plaintiffs' motion to transfer and consolidate (ECF No. 12) is **DENIED**.

It is further **ORDERED** that Defendant's motion for leave to amend (ECF No. 11) is **GRANTED**.

It is further **ORDERED** that Defendant shall file its Amended Answer and Affirmative Defenses to the Complaint in this matter no later than **July 10, 2012.**

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: June 19, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 19, 2012.

s/Tracy A. Jacobs  
TRACY A. JACOBS